

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **21-80152-CR-MARRA/MATTHEWMAN**

18 U.S.C. § 371
18 U.S.C. § 545
18 U.S.C. § 982(a)(2)(B)

UNITED STATES OF AMERICA

vs.

LUIS ANARBOL MORAN,
    a/k/a Luis Moran Gonzalez,

    Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. The United States Food and Drug Administration ("FDA") was an agency of the United States responsible for protecting the health and safety of the American public by assuring, among other things, that drugs sold for administration to humans were safe and effective for the intended uses and bore labeling containing true, complete, and accurate information. The FDA's responsibilities included regulating the labels, labeling, manufacture, and distribution of drugs shipped or received in interstate commerce.

2. The Federal Food, Drug and Cosmetic Act (FDCA) defined the term 'drug' to include (1) articles that were intended for use in the diagnosis, cure, treatment or prevention of

disease in humans; or (2) articles (other than food) that were intended to affect the structure or any function of the body of humans. 21 U.S.C. § 353(b)(1)(A).

3. Under the FDCA, a prescription drug was, among other things, a drug intended for use by humans which, because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or a drug which was limited by an approved application under 21 U.S.C. § 355 to use under the professional supervision of a practitioner licensed by law to administer such drug. 21 U.S.C. § 353(b)(l).

4. The FDCA defined the term 'label' as a display of written, printed, or graphic matter upon the immediate container of any article. 21 U.S.C. § 321(k). The FDCA defined the term 'labeling' as all labels and other printed or graphic matter upon any article or any of its containers or wrappers, or accompanying such article. 21 U.S.C. § 321(m).

5. Products containing botulinum neurotoxin Type A ("botulinum toxin") and intended for injection in humans to treat facial wrinkles were prescription drugs.

6. The FDCA defined many ways a drug was deemed misbranded, including: (a) if its label did not bear the established name and quantity of each active ingredient, 21 U.S.C. § 352(e)(1)(A); (b) if it did not bear a label containing the name and place of business of the manufacturer, packer, or distributor, 21 U.S.C. § 352(b)(1); and (c) if it was a prescription drug and its label failed to bear the symbol "℞ only," 21 U.S.C. § 353(b)(4)(A). All words, statements, and other information required to appear on the label must appear in English. 21 C.F.R. § 201.15(c)(1).

7. Under the FDCA, a drug was a "new drug" if it was not generally recognized among qualified experts as safe and effective for use under the conditions prescribed, recommended, or suggested in the drug's labeling. 21 U.S.C. § 321(p)(1). The FDCA prohibited the introduction of a new drug into interstate commerce unless the FDA had approved a new drug application or an abbreviated new drug application with respect to such drug, or such drug was exempted from approval pursuant to an effective investigational new drug application. 21 U.S.C. § 355(a), (b), (i), and (j).

## COUNT 1
### Conspiracy to Smuggle Goods into the United States
### 18 U.S.C. § 371

1. The General Allegations of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2. Beginning no later than in or around August 2016, the exact date being unknown to the Grand Jury, and continuing through on or about August 10, 2018, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**LUIS ANARBOL MORAN,**
**a/k/a Luis Moran Gonzalez,**

did knowingly and willfully combine, conspire, confederate, and agree with persons known and unknown to the Grand Jury, to commit an offense against the United States, specifically, to knowingly import and bring into the United States merchandise contrary to law, in violation of Title 18, United States Code, Section 545.

3. It is further alleged that the merchandise was imported and brought into the United States contrary to Title 21, United States Code, Section 331(a), prohibiting the introduction into

interstate commerce of any drug that is misbranded, and Title 21, United States Code, Sections 331(d) and 355(a), prohibiting the introduction into interstate commerce of new drugs that were neither approved nor exempt from approval pursuant to the FDCA.

## Purpose of the Conspiracy

4. It was the purpose of the conspiracy for the defendant and his conspirators to unlawfully enrich themselves through the administration of misbranded and unapproved new prescription drugs containing botulinum toxin to treat facial wrinkles.

## Manner and Means of the Conspiracy

The manner and means by which the defendant and his conspirators sought to accomplish the object and purpose of the conspiracy included, but were not limited to, the following:

5. Conspirator A was a resident of Palm Beach County who was licensed to apply permanent makeup and also performed other cosmetic procedures.

6. Conspirator A ordered prescription drugs containing botulinum toxin from the defendant, **Luis Anarbol Moran.**

7. Conspirator A deposited cash in the bank account of the defendant, **Luis Anarbol Moran**, to pay for the drugs she ordered.

8. Conspirator A specified various names and addresses to which the defendant, **Luis Anarbol Moran**, should ship the drugs, including addresses in the Southern District of Florida.

9. The defendant, **Luis Anarbol Moran**, shipped misbranded and unapproved new drugs from Mexico and other locations to the names and addresses specified by Conspirator A.

10. The shipments of the defendant, **Luis Anarbol Moran**, to Conspirator A included vials of unapproved new drugs containing botulinum toxin, including vials that were labeled as

"Neuroxin" and "Caspis." The Neuroxin was misbranded in that it did not bear a label containing the name of the manufacturer, packer, or distributor and it was a prescription drug, but its label failed to bear the symbol "℞ only." The Caspis was misbranded in that its label did not bear the established name and quantity of each active ingredient; it did not bear a label containing in English the name and place of business of the manufacturer, packer, or distributor; and it was a prescription drug, but its label failed to bear the symbol "℞ only."

11. Conspirator A administered the drugs by injection to her customers to treat facial wrinkles.

12. Conspirator A attempted to help the defendant, **Luis Anarbol Moran**, find other customers who would buy such drugs from **Moran**.

13. Conspirator A attempted to help the defendant, **Luis Anarbol Moran**, prevent competitors from selling such drugs to **Moran**'s customers.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its object and purpose, at least one of the conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

14. On or about August 29, 2016, Conspirator A referred a potential new customer to the defendant, **Luis Anarbol Moran**.

15. On or about March 28, 2017, Conspirator A agreed to give the WhatsApp information of the defendant, **Luis Anarbol Moran**, to Conspirator A's friend so that the friend could decide whether to buy drugs from **Moran**.

16. On or about April 13, 2017, Conspirator A deposited $1860 in cash in the bank account of the defendant, **Luis Anarbol Moran**.

17. On or about April 17, 2017, the defendant, **Luis Anarbol Moran**, caused a package to be shipped from Guadalajara, Mexico, to Conspirator A in Palm Beach County, Florida.

18. On or about September 21, 2017, Conspirator A deposited $2450 in cash in the bank account of the defendant, **Luis Anarbol Moran**.

19. On or about September 21, 2017, the defendant, **Luis Anarbol Moran**, caused a package to be shipped from Guadalajara, Mexico, to Conspirator A in Palm Beach County, Florida.

20. On or about January 10, 2018, Conspirator A agreed to talk to a friend to see if the friend wanted to buy drugs from the defendant, **Luis Anarbol Moran**. Conspirator A and **Moran** discussed the prices at which **Moran** would sell drugs to Conspirator A's friend.

21. On or about June 25, 2018, Conspirator A deposited $1300 in cash in the bank account of the defendant, **Luis Anarbol Moran**.

22. On or about June 25, 2018, the defendant, **Luis Anarbol Moran**, caused a package to be shipped from Guadalajara, Mexico, to Conspirator A in Palm Beach County, Florida.

All in violation of Title 18, United States Code, Section 371.

### COUNT 2
**Smuggling Goods into the United States**
**18 U.S.C. § 545**

On or about April 17, 2017, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**LUIS ANARBOL MORAN,**
a/k/a Luis Moran Gonzalez,

did knowingly import and bring into the United States merchandise contrary to law, in violation of Title 18, United States Code, Sections 545 and 2.

It is further alleged that the merchandise was imported and brought into the United States contrary to Title 21, United States Code, Section 331(a), prohibiting the introduction into interstate commerce of any drug that is misbranded, and Title 21, United States Code, Sections 331(d) and 355(a), prohibiting the introduction into interstate commerce of new drugs that were neither approved nor exempt from approval pursuant to the FDCA.

### COUNT 3
**Smuggling Goods into the United States**
**18 U.S.C. § 545**

On or about September 21, 2017, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**LUIS ANARBOL MORAN,**
a/k/a Luis Moran Gonzalez,

did knowingly import and bring into the United States merchandise contrary to law, in violation of Title 18, United States Code, Sections 545 and 2.

It is further alleged that the merchandise was imported and brought into the United States contrary to Title 21, United States Code, Section 331(a), prohibiting the introduction into interstate commerce of any drug that is misbranded, and Title 21, United States Code, Sections 331(d) and 355(a), prohibiting the introduction into interstate commerce of new drugs that were neither approved nor exempt from approval pursuant to the FDCA.

## COUNT 4
**Smuggling Goods into the United States**
**18 U.S.C. § 545**

On or about June 25, 2018, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**LUIS ANARBOL MORAN,**
**a/k/a Luis Moran Gonzalez,**

did knowingly import and bring into the United States merchandise contrary to law, in violation of Title 18, United States Code, Sections 545 and 2.

It is further alleged that the merchandise was imported and brought into the United States contrary to Title 21, United States Code, Section 331(a), prohibiting the introduction into interstate commerce of any drug that is misbranded, and Title 21, United States Code, Sections 331(d) and 355(a), prohibiting the introduction into interstate commerce of new drugs that were neither approved nor exempt from approval pursuant to the FDCA.

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **Luis Anarbol Moran, a/k/a Luis Moran Gonzalez**, has an interest.

2. Upon conviction of a violation, or conspiracy to commit a violation, of Title 18, United States Code, Section 545, as alleged in this Indictment, the defendant shall forfeit to the United States:

   a. Any merchandise introduced into the United States as a result of such violation, or the value thereof, pursuant to Title 18, United States Code,

    Section 545; and

  b. Any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such violation, pursuant to Title 18, United States Code, Section 982(a)(2)(B).

All pursuant to Title 18, United States Code, Sections 545 and 982(a)(2)(B) and the procedures set forth in Title 21, United States Code, Section 853, as made applicable hereto by Title 18, United States Code, Section 982(b)(1).

              A TRUE BILL

              _____
              FOREPERSON

_____
JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

_____
MARC OSBORNE
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

LUIS ANARBOL MORAN

    Defendant.            /

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

**Court Division:** (Select One)
- [ ] Miami
- [ ] Key West
- [ ] FTL
- [✓] WPB
- [ ] FTP

New defendant(s)  [ ] Yes  [ ] No
Number of new defendants _____
Total number of counts _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.
3. Interpreter: (Yes or No) **Yes**
   List language and/or dialect **Spanish**
4. This case will take **7** days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I    0 to 5 days        [ ]
   - II   6 to 10 days       [✓]
   - III  11 to 20 days      [ ]
   - IV   21 to 60 days      [ ]
   - V    61 days and over   [ ]

   (Check only one)
   - Petty         [ ]
   - Minor         [ ]
   - Misdemeanor   [ ]
   - Felony        [✓]

6. Has this case previously been filed in this District Court? (Yes or No) **No**
   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) **No**
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No) **No**

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No**
8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? (Yes or No) **No**
9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No**

_/s/ Marc Osborne_
MARC OSBORNE
Assistant United States Attorney
Court ID No.    A5500796

\*Penalty Sheet(s) attached

REV 3/19/21

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** LUIS ANARBOL MORAN

**Case No:**

Count #: 1

    Conspiracy to Smuggle Goods into the United States

    Title 18 U.S.C. § 371

\* **Max.Penalty:** 5 years' incarceration, three years' supervised release, $250,000 fine, mandatory $100 special assessment

Counts #: 2-4

    Smuggling

    Title 18 U.S.C. § 545

\* **Max.Penalty:** 20 years' incarceration, five years' supervised release, $250,000 fine, mandatory $100 special assessment